10-3505 Michael Percerno v. 1400 MUSEUM Park Condominium. Will the lawyers please approach and identify yourselves. Good morning, Your Honors. David Rudolph on behalf of the Plaintiff Appellees, Michael Percerno, Christine Percerno, and Norris Arias. Good morning and welcome to you both. Will the appellant like to reserve a few minutes for rebuttal? Okay. Why don't we proceed. May it please the Court. My name is Carrie Durkin and I represent 1400 MUSEUM Park Condominium Association. The facts of the case are fairly simple and well set out in all the briefs. Which I want to assure you we've all three read. I'm curious only about one thing. Was there an actual surveying measure placed on the amount of diminution in the ownership interest of the other condos? There's about a... Did somebody measure it? There were measurements made, yes. And what were those measurements? Is that in the record? If it's not in the record, I suppose we shouldn't ask. Well, there's different kinds of suggestions about it. But could you say probably with some kind of reasonable certainty that the two doors are somewhat perhaps eight feet from the end corridor? It wasn't eight feet mentioned? No, including the doors. And then the height of the hallway, isn't that described in the record? It is, but probably it's a small area, probably two feet from the edge of the corridor. And then the width of the door. And then a small area on the other side. And that's where the new door would be put. It was described though at least as perhaps eight feet out where this new door would... So would that appropriate eight new feet on floor number 23 that would no longer be accessible to the other owners on the floor? That's correct. And what's the general square footage? The reason I ask is because this is an appeal from a ruling of the trial court finding that the matters involved are de minimis. Now, there's a difference between the standard imposed under 31, which looks to the degree of interest of the other condo owners, and the concept of de minimis. Because the standard under 31 deals with the rights between the parties. De minimis deals with the rights of the court. De minimis non disputat curat lex. That if something is of virtual negligible import, the courts will not concern itself with it regardless of its impact on the rights of the parties. In other words, you could have 100% entitlement to a property, but if it has minimal value, the courts will not administratively occupy themselves with it. And I think the public's a third-party beneficiary of that, because look at all the attorneys. Well, Your Honor, I think we addressed that in the reply brief. Because we talked about how the interests in property are not the same as other interests, and that courts have routinely, even for a minimal trespass, awarded nominal damages. And even a minimal encroachment onto real property that's owned by another person, if it's intentional, will cause that structure to be taken down. And we cited cases to that effect. I have a question. It's suggested in the briefs. One of you is suggesting that there's a requirement that all of the condominium owners have to agree. And then I believe it was a letter addressed to the CERNOs that they had to acquire the agreement of just the owners on their floor. Can you clear that up for us? Yes. That entire discussion should be outside the record. That was settlement negotiations between the corporate attorney for the association and the CERNOs to try to settle this matter. Settlement negotiations should not be. Well, that's not my question. There's a suggestion that the board was going to permit this if they could get the agreement of all of the owners on the 23rd floor. But the act, I'm sorry, yeah, the statute requires consent of all the owners of a condominium association. I agree with that, Your Honor. And all I can say is that was part of settlement negotiations before I became involved in this litigation. I think the act is what the act is. And 4E says if you're going to take common areas that we say are accessible to other members of the condominium association, then you have to have the agreement of all the members of the association. Section 31 can only be read in coordination with 4E if it means common areas which are not accessible to other condominium members. That's based on one piece of history. I don't want to call it legislative history because I don't think it really has a legislative history. But one representative expressed himself by using the term hole in the wall indirectly on that subject. He used it as an example. And doesn't that example in and of itself conflict with the position which you so ably urge, that when it comes to property rights, there is no de minimis concept because that hole in the wall is still a common area, albeit it's limited in its accessibility, but it's still a common area. And once you compromise that common area, why not proceed further than that when you're dealing with de minimis? Because the section 4.1.2 defines technical common areas. Walls, floors, ceilings are common elements except for their finished surfaces. The poking a hole in the ceiling to combine two units does not require a reallocation of the common interest. Going into the hallway requires a reallocation of the common interest. And in the Husky case, there was no discussion. That's a 27B comparison with 4E, which is a little bit different. But in that case, there was no discussion of whether the error that the developer had made when allocating the common areas was de minimis or not. It just simply was because they have to be reallocated, you go to 4E, and there has to be a 100% vote. So if this area at the end of the hall on the 23rd floor is lost to the association as a result of this action, how many floors are there in the building? Is that in the record? I think it's 14. Well, it's the 23rd floor, isn't it? That would be wrong. But what I'm saying is, theoretically, couldn't this be repeated at the end of every hallway on every floor under a precedent here? Absolutely. And wouldn't that have an impact on the size of each of these units that are affected and potentially impact the resale value of all of those units? Absolutely. And I think, and I briefly pointed out that this would be a rule of law that could apply to an eight-unit condominium association, where the impact of that eight feet would be much larger on each of those condos than perhaps it is in a 30-story high-rise. Wouldn't the standard still remain the constant so that as the appropriation would expand, the configuration or the characterization of that depletion as the minimus would in itself recede? So that why worry about the tenth time that this might happen if, when it occurs for the first time, it's virtually negligible and can be confused with the spike suit? Your Honor, can I sort of indirectly address that? Sure. Because I think it's something that's really important. Sure. I want, that's why I brought it up. I represent a lot of boards of directors who are being sued. And they always want to find an objective way to make decisions on requests from tenants. If we have a de minimis standard, then you've got a board of directors constantly trying to decide what is de minimis and what is not. Well, you know, maybe we should flush out here that there is nothing in the language of the statute that even uses this term de minimis. The language of the statute was necessary or practical for use. I agree, Your Honor. So I don't know how that translates into de minimis. Your Honor, I'm addressing it simply because that was the basis for the trial court's decision. I don't think 4E has a de minimis standard, period. I think if you're taking common areas that are accessible to other owners, there is no de minimis standard that requires 100% approval. Well, supposing it was one inch. I mean, are you going to apply the 222 East Chestnut case to that too? That's not one of your cases. But it's a case where the battle was over a very small amount of encroachment when you had trespass. Now, I don't know that the use of common area space falls under trespass, does it? No, but I think it's analogous because it pertains to real property. But where did you cite? Are there any cases that you've cited to us that actually reject the concept of de minimis? Because it seems to me that the courts have other things to do with their time. Well, Your Honor, I have been unable to find any case in the context of Section 31 and 4E of the Condominium Act that has even addressed the interplay of those two. But the cases that you've cited to us which do involve encroachment, do any of those cases reject, in so many words, the application of the de minimis standard? No, Your Honor. But no one has been able to cite any case that allows a de minimis standard under Section 4E. Well, a couple of cases talk about a parking space that couldn't be allocated to one owner without taking away the condominium rights of the other unit owners. The case involving the balcony extension, I mean, the question there, I suppose it could have been argued that what is this person on the lowest unit really losing? Well, in that balcony case, I believe what they said is where the improvement to the balcony was such that it took away the total use by the condominium owners of a portion of that balcony. It didn't address de minimis, the fact that they maybe had to walk five inches to one side. It said that that was required for e-approval. Well, the statute says you really can't take away any percentage of ownership without the agreement of the owners, all of the owners. Now, in this case, the board did propose how to go about doing this. Didn't they come up with some arrangement in terms of getting the approval? They wanted $6,000. I mean, that's in the record. It was in the context. It's in the context of settlement negotiations. I understand, but the point is the board was willing to work. I'm not fighting you. I'm saying the board was willing to work with the PASERNOS to get what they wanted to do. The board spent a lot of time, it's my understanding, I wasn't part of those negotiations, trying to see if there was some workable way to do this. When they decided that there was no workable way and when the PASERNOS did, the PASERNOS filed a lawsuit. On the other hand, the agreement between the association and the owner, I guess, the condominium agreement, does promote the facility by which combination of units can be effectuated and does not appear to emphasize any distinctions between the hole in the wall and whatever superficial changes have to be accomplished in order to combine, to transform the separate entrance units into a single separate entrance unit. So the board carries some responsibility here in luring its tenants to rely on that facility, which in this case is not an abstraction if we're to believe the briefs, because evidently it in effect was relied upon by the plaintiffs who had the intention of combining units from the get-go. Your Honor, the response brief is largely an equitable brief. I think their argument is that equitably we bought these units, we wanted to combine them from the time we bought the units, we didn't see anything in the declaration that prevented it, and therefore we went ahead to try to do that. And there's no allegation that they went to any member of the board before they bought the units. It's not an equitable estoppel or promissory estoppel case. It's a declaratory judgment action for what is allowed under the statute and under the declarations. As I'm sure you know, most of these cases talk about the fact that the declaration doesn't trump the act. The act is first. And the declaration cannot violate the act. And so the fact that the declaration may have been more clear does not mean that it isn't true. I'm not sure about that, because I think in some provisions the act itself provides for contractual trumping, that the parties can override the restrictions under the statute by contract. I'm not looking to get into contract law as to the impact of the condominium agreement on each of the tenants, both who purchased units both before and after that agreement was entered. But in point of ‑‑ I'm really responding to your previous statement that the board is given every consideration, and if it gives every consideration to the extent that it has or considers itself to have discretionary authority, that its provision in its own agreement should certainly be a major one. And I agree with that, Your Honor, but the judge ‑‑ And that's really not reflected in the Draconian prices that your settlement negotiations, which turns out to be part of this record, otherwise that wouldn't be discussed, seem to implicate here. Well, the settlement discussions were not introduced by ‑‑ Well, they're in the briefs. They're in the complaint. They're in this record. To say that, you know, somehow we're going to ignore them doesn't make any sense. The complaint for declaratory judgment sets out all of this information. But had that, for example, been accepted by the CERNOs in these circumstances, there's nothing to say that another owner in the condominium association would have been precluded from challenging that agreement as a violation of the statute. That's correct. And you agree that under the statute, if the CERNOs simply wanted to, you know, break through the walls that actually do join these condos, that the board wouldn't have to do anything as far as approving that? All it requires is a majority of the board to approve it, and a simple majority. And so that would have been readily approved. Anything further you'd like to argue at this point? The only other thing that concerns the affidavit, we believe it should have been stricken under Rule 191B. Okay. And we have lots of reasons for that, but you can see those on the right. Thank you. Mr. Rudolph? In fairness to you, Mr. Rudolph, I would suggest to you, if you haven't been here before, don't, it would be in your interest not to confuse my questions with the position that I'm ultimately going to take in this case. Okay. Thank you. Thank you, Your Honor. One introductory point I want to make is, at the trial court level, there wasn't a written opinion in this case, and appellant's argument that this case is all about creating a de minimis standard of Section 40 of the Condo Act is not what happened at the trial court. And what happened is, this case is really about Section 31 of the Condo Act. And the judge at the hearing made a comment when, after she made her ruling, she said, listen, the amount of space we're talking here is de minimis. I just want to clarify that this is not a situation where there's, I think appellant is trying to shift the focus to Section 40. Do you think that it would justify a reallocation of percentages if, in fact, you were able to effect this combination? And that reallocation would also determine your property taxes. And everybody else in the building. Yeah. Right. Maybe the assessments. Well, I think that's what the, we have to look at what Section 31 says, and it says it's reasonable or practical, and I think that that's something that an assessor would look at and what have you. And remember, this case … No, the assessor assesses the entire building, and then your individual, the liability of each individual owner, is determined through ordinary addition, subtraction, multiplication based on this one figure. So it's not going to change the assessment for the entire building, but it will increase your share of it and decrease everybody else's. And if not, why shouldn't they get that entitlement? I'm not sure what criteria assessors actually use. I don't think it's just square footage, and I think it may actually dovetail with what Section 31 says, is that is this property necessary or practical for use by other unit owners? And where was the evidence? I'll confess to you at this point that at one time I did some work that carried with it the title of Chief Deputy Assessor. I don't think that that's changed as much since then. I think that the individual units are still assessed on the basis of taking the total assessment for the entire building and dividing it by your ownership. Time to move on to the next point. Okay. This case is about Section 31. And what's happening here is an appellant wants to engage into a complete rewrite of what the statute says. It doesn't say in the statute that the rationale is that the common elements have to be inaccessible to unit owners. That's what appellants want to do. They want to ignore the language of the statute. Based on basic statutory construction analysis, the fundamental precept that we cannot render a word clause or sentence meaningless or superfluous. What's happening here, we're not dealing with a word or clause. What the appellants are trying to do is completely ignore an entire subparagraph of the statute. And it says that a common element should be reallocated. And this is only about unit combinations. This is not about taking away balconies or parking spaces. It only deals with the context, the rare instance in which unit owners own combining units. And it says they should, the board should. Is it really about whether it's a parking space or corridor space? Or is it about the condominium owner, their rights, and what has been established under the statute and the declaration? The Act says that once these interests are set, you cannot change them without the agreement of all. Isn't that the heart of condominium association ownership? That they have a right, they have an ownership right in the common elements. And it cannot be changed without the approval of all of those owners. Absolutely, Your Honor. And I believe that's the reason why the statute was passed in 1997. We have these cases, Carney v. Donnelly, these other cases in which we're dealing with an association board member that wants a land grab to expand their balcony or taking parking spaces that were common areas. These are two owners that have separate units that want to take part of the hallway so they can put up another wall and put their own door and take the space that's generally considered a common element and owned by, and each owner in that building has an interest in that. It can't be subject to you deciding you want to do this unless they all agree. And I submit, Your Honor, that's why Section 31 was passed. I imagine there were periods of time over the last 20 years before 97. I mean, there's legislative history about 31, why it was passed. It was passed so that people that did own two units, at least it's suggested in the comments, that people like the preservers could simply knock down the wall between their units. Or presumably put in an interior wall that would allow separate entrances and then something connecting. I mean, there's all sorts of other options that could exist that wouldn't require taking some of the common elements. Isn't that true? This was just the preferred way by them to take a portion of the hallway. I would say that there's nothing in the record to say that that was a viable option for my clients. And I'll just say, if you look at what the record is. Wouldn't it be an unusual set of circumstances for that to be the only viable option? No, Your Honor, but it's interesting to look at the record in this case. We don't have a record here in which we have a board saying, you know what, why don't you combine your units? Here's how you can do it. Or the board saying, you know what, this will aesthetically. Wasn't there something in the record about there being a common wall? Yeah. I think I remember that. That wasn't. Yeah, okay. You can take judicial notice of that, Your Honor. So there is a common wall. Correct. Yes. How much space would you say we're talking about here? Give us a good guess. I think it's five feet maybe, or it's a few feet. It's five feet from the end of the hallway. To their doors? Well, they have two doors that are facing each other. Right. Okay, how much are we talking about here? Five feet by, I'm not sure how wide the hallway is, or it might be four feet. And how high? Eight feet, 10 feet, I'm not exactly sure. I think it was. 160 cubic feet, that would be. May very well be. I'm not entirely certain. And in terms of the.  Well, I'm not saying. That's not necessary and practical. Well, that's the issue in this case, Your Honor. Well, should the judge have decided on a summary judgment that it wasn't necessary and practical? If there was nothing in the record, there was nothing from the unit owner on that floor that says, hey, I've got a problem with this, or you're taking too much of the hallway, or aesthetically it's not pleasing, or there's an impact of this floor. Why would it be limited to the unit owners on that floor? For example, if there was a board member, or forget a board member, another unit owner who says, well, you know, I don't have an end part, but if this is allowed to go forward, then theoretically at the end of both hallways for every floor of this building, somebody could be setting up stakes and grabbing a piece of the hallway. Well, if every floor had two unit owners that own both units. That's just the happenstance, whether somebody said, well, you know, I'd like that too. But in this case, we don't see that. And I think that's why the judge granted summary judgment. I don't know however you slice it. The percentage of common interest ownership impacts every single unit owner's property taxes. There's no question about that. It impacts the amount of their annual and special assessments, as well as the resale value of their unit. Their right to the common ownership that they have is impacted. The aesthetic quality of the corridor. Skipping this necessary and practical, how does one unit owner get to go into court and say, judge, we want to take this 8 square feet or 860 cubic feet, and we want to put a door in because this is what we thought we could do when we bought the place. The board said you could do it, but you have to do certain things first, didn't they? Well, my clients, in fact, hired an architect. The board asked for an opinion from the lawyers, which is somewhat interesting. The lawyer initially said the unit combination could occur, prepare an amendment to the declaration, and let's move on. And the board did not follow the advice of their own attorneys. But counsel, isn't this entirely a question of aesthetics and the architect? Because if you can combine the two units interiorly without any resistance, then all you're talking about is the architectural aesthetics of keeping one of the doors and perhaps doing away with the other or keeping them both, for that matter, having two entrances to a common unit. And the rest of your combination takes place inside, and I'm sure you won't get resistance from Commonwealth Edison in sending you one electric bill or one utility bill for both units combined as opposed to two. So this is not, in that sense, an either-or situation. At that point, I must fall back on what the statute says. And the statute that was passed by the legislature did not say it's got to be between the walls. It's got to be a hole in the wall. Well, except that you do get some support. I grant you that. I don't think it's compelling support from the, what is it, the Husky case, which deals with correction of errors as opposed to combination of units. But you also do have 4E, which requires unanimity in reallocation, and 31, which, according to your interpretation, would at least modify that. And if there's a way of interpreting that statute to avoid that modification, there's some support for that alternate interpretation, which would be restricted to where the, evidently, the legislators evidently had their eyes set, which was interior remodeling as opposed to exterior. I believe that there was some ambiguity in the statute that there could be attention paid to what one legislator in the House may have said. What do we do with 4E, then, under your interpretation? We have to read them all together. Now, what do we do with 4E? Because it says the percentage of ownership interest in the common elements shall not change and we've tried to redirect the focus to that, that it's a stretch to say that 4E talks about when there is a minor reallocation of limited common elements. It says that the board can't decide to say, you know what, owner, you own 3%, you now own 2%. We want to reexamine how these percentage of interests are established. Boards can't do that. That is a judgmental right. Let's flip it on its other side. You're talking about the percentage for the other condominium owners, members of the association. If you look at it the other way, somebody has just grabbed, say, 5 by 4, 20 extra square feet for their unit. And it's hard to imagine how that wouldn't affect resale value and why that wouldn't, I mean, what you're basically urging on us is to set out a standard that would be the thin end of the wedge that would allow people to cite this as authority for the fact that, hey, if you have enough chutzpah, you can go in and grab some of the other people's property. Well, boards have the obligation, you know, our non-for-profit board is soon going to exercise sound business judgment. And when they're deliberate over this, they can look at this and say, hey, you know what, you could have done it through the common law. We don't like what you're doing here. But they did say you could do it. They said if you want to do it, here's what you need. You need the $6,000 other report. You have to pay for the attorney's fees for what's been generated. You have to pay $150 a month license to have this extra space that nobody else has and is now taken away from theirs. And lastly, get permission of just the people on the floor or get everybody's permission. Now, if the board recommended that, you don't think that this couldn't have been accomplished? I apologize for interrupting, Your Honor. What the board said, you had to have approval of every unit owner in the building. Right, but what I'm saying is you don't think that the board could have held a meeting and suggested to the condominium owners that here's what we propose to let them do this. If they do this, this, this, and that, we suggest that you vote to permit them to do it. And then it would be put to those owners. I believe in that case that the board should have laid out a criteria in the minutes or what have you as to why this space is reasonable or practical for use by other owners. And if they did that, we may have had a lawsuit in which it would have been more of an issue of fact. Well, because they own it to begin with. The act says that once the ownership amount has been determined, it remains constant unless agreed to by the others. Every one of those owners in that building had an ownership interest in the condominium, the hallway. It's expressed. Their amount of ownership is actually expressed. A percentage of this common area is given to them. So, I mean, it's being taken away. And I just don't see how you can avoid 4E. And you didn't buy, your client didn't buy that property that they're now seeking to use as their own. And presumably when it's time to sell, they could sell that property that they never bought. Your Honors, I would again state that I believe that's why Section 31 of the act was passed. It's because... I read the history and the language in those comments was that it was some representative whose friend wanted to break down or tear apart two walls, or a wall adjoining two units. And that's what he said was the reason for necessary and practical. Because the inside, the limited common elements that are owned weren't really useful or practical for anybody else. Tearing down the wall inside those two units wasn't really going to make too much of a difference in terms of use or necessity for anyone else in the building. As opposed to a corridor, which they actually have a specific percentage of ownership right to. I don't see the difference between a parking space you can't take away because all of the owners own part of that parking space, versus a hallway. I don't know if that legislator was trying to push for the language that Ms. DiPellon is arguing for that says it's got to be inaccessible to other unit owners. But all I know is that the final legislation that was passed by the legislature says that the board shall permit the combination unless those common elements are shown to be necessary or practical use from other owners. And couldn't that be really a circumstance where, yeah, I want to knock a hole between my units, but unfortunately that's a weight-bearing wall. And that would be a limitation on your ability to knock a hole in the wall. Can't give them unfettered license to do that because the building might collapse. Couldn't that be just as easy the interpretation of why they put that language in there? I think that the term practical, though, the legislator used that term practical to say, listen, this serves no purpose to the association. In this case, we're 20-some feet from another unit. And I think that the legislature used that word for a reason. It didn't say it's got to be between the walls of an association. All right. Mr. Rudolph, thank you very much. Any final words, Ms. Durkin? Your Honor, only that we have requested the relief of striking the affidavit granting our summary judgment motion and denying the summary judgment motion. Thank you both for a very well-argued case and for very persuasive briefs. And we'll take the matter under advisement.